## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CASSANDRA KINCAID,

        Plaintiff,

v.                                                                    Case No. 21-2059-DDC-TJJ

UNIFIED SCHOOL DISTRICT NO. 500,
KANSAS CITY, KANSAS,

        Defendant.

### MEMORANDUM AND ORDER

Plaintiff Cassandra Kincaid is an assistant principal at one of the schools within defendant Unified School District No. 500 in Wyandotte County, Kansas.  In 2019, she reported an alleged sexual assault and harassment of a female student at a school.  Plaintiff alleges that her school's principal, following her report, began a campaign of harassment extending more than 18 months.  The alleged harassment included reprimands, exclusion from meetings and communications, and, eventually, a failure to promote her to principal.  In this action, she asserts claims for retaliation, retaliatory harassment, and sexual harassment, violating both Title IX of the Education Amendments of 1972 and Title VII of the Civil Rights Act of 1964.  Before the court is defendant's Motion to Dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) (Doc. 6) and supporting memorandum (Doc. 7).  Plaintiff has responded (Doc. 10).  And defendant has replied (Doc. 11).  This Order decides this motion.  It grants in part and denies in part defendant's motion, for reasons explained below.

I.      **Background**

The following facts come from plaintiff's Complaint (Doc. 1).  The court accepts

plaintiff's "well-pleaded facts as true, view[s] them in the light most favorable to [her], and

draw[s] all reasonable inferences from the facts" in her favor.  *Brooks v. Mentor Worldwide LLC*,

985 F.3d 1272, 1281 (10th Cir. 2021) (citation omitted).[1]

Plaintiff has worked for defendant Unified School District No. 500 ("USD 500")[2] in

Kansas City, Kansas for 20 years.  Doc. 1 at 3 (Compl. ¶¶ 11–12).  She is currently an Assistant

Principal at Central Middle School, where the events leading to this lawsuit took place.  *Id.*

(Compl. ¶ 12).

### *Spring 2019—Plaintiff Reports Alleged Sexual Assault*

On March 21, 2019, a female student reported to plaintiff that a fellow student—a young

man—had sexually assaulted her in a stairwell at the school.  *Id.* (Compl. ¶ 14).  Because the

male student was in a special education program, plaintiff contacted defendant's Director of

---

[1]     Defendant attaches several exhibits to its Motion to Dismiss, arguing that plaintiff's allegations are false and that her characterization of certain communications is likewise misleading when compared to the offered exhibits.  *See* Docs. 7-1, 7-2, 7-3, 7-4, 7-5, 7-6 (Exs. A–F); *see also* Doc. 11-1 (Ex. G); Doc. 11 at 10–11 (attacking plaintiff's characterization of her factual allegations).  Plaintiff urges the court not to consider these exhibits and instead to evaluate only the allegations contained in her Complaint.  *See* Doc. 10 at 6–7.  Ordinarily, the court "*may* consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (emphasis added).  But the court declines to do so here because defendant's exhibits invite the court to weigh their content against plaintiff's allegations.  *See, e.g.*, Doc. 11 at 11 (offering Exhibit B to argue the real reason why Principal Skretta reprimanded plaintiff, which the court interprets as an argument more appropriately suited for the pretext stage at summary judgment or trial); *see also id.* (offering Exhibit F to show that Principal Skretta's performance evaluation "was not unfavorable" to plaintiff).  The court's "'function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.'"  *Jacobsen*, 287 F.3d at 941 (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)).  So, the court exercises its discretion and won't consider defendant's attached exhibits.

[2]     Defendant is a recipient of federal funds.  Doc. 1 at 3 (Compl. ¶ 11).

Student Services to determine how to proceed with the report.  *Id.* (Compl. ¶ 15).  The Director

of Student Services recommended that plaintiff proceed with a "B-level hearing"[3] in response to

the female student's report.  *Id.* (Compl. ¶ 16).  Plaintiff then told her supervisor, Principal Fred

Skretta, about the report and the Director's recommendation.  *Id.* (Compl. ¶ 17).

    The next day, Principal Skretta met with plaintiff and "appeared angry, questioning why

she would have reported the alleged sexual assault to the Director of Student Services."  *Id.*

(Compl. ¶ 18).  A few days later, Principal Skretta emailed plaintiff and another administrator.

*Id.* (Compl. ¶ 19).  This message directed them that they should inform him "prior to [imposing]

any discipline of any special education student."  *Id.*  And the day after that, Principal Skretta

emailed plaintiff and other administrators to tell them that he "was reducing the male student's

suspension and that a 'manifestation' was not necessary."[4]  *Id.* (Compl. ¶ 20).  But that same day,

after "correction from the [d]efendant's Director of Student Services . . . Principal Skretta

reinstituted the 10-day suspension, 'manifestation,' and hearing [p]laintiff had originally

recommended."  *Id.*  Principal Skretta also told plaintiff she shouldn't attend the hearing.  *Id.* at 4

(Compl. ¶ 21).

    A few days later, on March 29, 2019—about a week after plaintiff had reported the

alleged sexual assault—Principal Skretta sent plaintiff a formal reprimand for her handling of the

female student's report of sexual assault.  *Id.* (Compl. ¶ 22).  Plaintiff asked Principal Skretta

what policy or procedure she had violated but he "admitted none."  *Id.*  Plaintiff then met with

Principal Skretta and another administrator, where plaintiff alleges Principal Skretta "raised his

---

[3]     Plaintiff's Complaint doesn't explain what a "B-level hearing" entails.

[4]     Plaintiff's Complaint doesn't explain what a "manifestation" means in the context of student discipline.

voice" after plaintiff "again asked him what policy she had violated." *Id.* (Compl. ¶ 25).
Principal Skretta told plaintiff the "formal written reprimand . . . would go in [her] HR file." *Id.*

Later, in April 2019, plaintiff "reported Principal Skretta's conduct to [d]efendant's
administrators, who told her they needed to investigate her report." *Id.* (Compl. ¶ 26).
Throughout spring 2019, Principal Skretta then began "to exclude [p]laintiff from meetings and
communications," leaving her "to find out about meetings from her subordinates and
colleagues." *Id.* (Compl. ¶ 27). Plaintiff reported Principal Skretta's conduct multiple times to
defendant and asked several administrators to intervene. *Id.* (Compl. ¶ 28). But, plaintiff
alleges, Principal Skretta's "conduct continued[.]" *Id.*

At the end of April 2019, plaintiff reported to Principal Skretta a concern she had about
the male student involved in the earlier sexual assault allegation. *Id.* at 5 (Compl. ¶ 29). She
told Principal Skretta that she had seen the male student on school video cameras "leaving a
classroom several times during class without an escort or teacher checking on him." *Id.* But
Principal Skretta didn't allow plaintiff to take any action. *Id.*

A little more than a week later, plaintiff told Principal Skretta and other administrators
about another incident involving the same male student and same female student. *Id.* (Compl. ¶
30). According to plaintiff's Complaint, the female student told plaintiff and a school counselor
that "the male student had approached her twice during the day, without an escort, and told her
that she should kill herself." *Id.* Plaintiff also learned that another student "overheard the male
student threatening to kill the female student." *Id.* Also, plaintiff learned that the female
student's parents took her to a crisis center after she made suicidal comments. *Id.* Plaintiff gave
all this information to Principal Skretta and other administrators via email. *Id.* (Compl. ¶¶ 30–
31). She also noted in an email that "the male student had not had a Functional Behavioral

Hearing and a Behavioral Improvement Plan was not in place." *Id.* (Compl. ¶ 31). But the next day, Principal Skretta told plaintiff to "leave it alone." *Id.* (Compl. ¶ 32).

Later in the spring of 2019, plaintiff applied for one of five open principal positions in the school district. *Id.* (Compl. ¶ 33). She didn't get the job. *Id.* And in the months afterwards, plaintiff alleges, Principal Skretta continued to exclude plaintiff from meetings at Central Middle School. *Id.* (Compl. ¶ 34). In response, plaintiff again reported Principal Skretta's conduct to defendant's administrators in August 2019. *Id.* Plaintiff also alleges that the "other female principal working beneath Principal Skretta at [Central Middle School] also experienced harassing behaviors from him." *Id.* (Compl. ¶ 35).

### *Spring and Summer 2020—Principal Skretta's Alleged Ongoing Harassment*

During the next calendar year, plaintiff continued serving as an Assistant Principal at Central Middle School. Principal Skretta continued in his role too. And according to plaintiff, Principal Skretta's alleged harassment continued.

In early February, the school was evacuated after a fire alarm sounded. *Id.* (Compl. ¶ 36). Principal Skretta wasn't in the building at the time, but plaintiff was. *Id.* So, he reprimanded plaintiff for not telling him about the building evacuation, even though plaintiff was not "in charge of the building at the time, . . . [not] in charge of crisis drills, [nor was she] the only assistant principal present" at the time. *Id.*

In late February, plaintiff called 911 in response to a student who was "at the time, aggressive and out of control[.]" *Id.* at 6 (Compl. ¶ 37). Principal Skretta reprimanded plaintiff for not telling him about the situation before calling 911. *Id.*

In April, Principal Skretta gave plaintiff a poor performance evaluation. *Id.* (Compl. ¶ 39). He placed the evaluation in plaintiff's personnel file. *Id.* Plaintiff alleges Principal Skretta

didn't observe her work before the evaluation, and he didn't confer with her afterwards. *Id.* Plaintiff alleges a conference was required. *Id.*

In July, "Principal Skretta began to single out [p]laintiff for time-reporting requirements." *Id.* (Compl. ¶ 40). And throughout the summer and fall of 2020, "Principal Skretta continued to not invite [p]laintiff to meetings" or tell her about schedule changes. *Id.* (Compl. ¶ 41).

Plaintiff again reported Principal Skretta's conduct to defendant's administrators in March 2020. *Id.* (Compl. ¶ 38). Specifically, she told them about Principal Skretta's alleged "ongoing harassment, singling [plaintiff] out for public criticism and unfounded reprimands." *Id.* After interviewing Principal Skretta, defendant later admitted that Principal Skretta's "reprimand and the negative evaluation . . . were unfounded." *Id.* (Compl. ¶¶ 42–43). But, defendant concluded that Principal Skretta "had not retaliated against [p]laintiff." *Id.* (Compl. ¶ 42).

On November 13, 2020, plaintiff filed a Charge with the Equal Opportunity Employment Commission (EEOC). *Id.* at 2 (Compl. ¶ 8). It alleged gender discrimination and retaliation. *Id.* On January 26, 2021, the EEOC issued a Notice of Right to Sue to plaintiff. *Id.* (Compl. ¶ 9). Plaintiff timely filed her Complaint in this court.

## II.    Legal Standard

Fed. R. Civ. P. 12(b)(6) allows a party to move the court to dismiss an action for failing "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that the factual allegations in the complaint are true, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). And, while this pleading standard doesn't require "'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Plaintiff contends that dismissal "'is inappropriate under Fed. R. Civ. P. 12(b)(6) unless the plaintiff can prove no set of facts in support of his claims to entitle him to relief.'" Doc. 10 at 5 (quoting *Seamons v. Snow*, 84 F.3d 1226, 1232 (10th Cir. 1996)). But this isn't the law. The Supreme Court since has abrogated that standard—established in *Conley v. Gibson*, 355 U.S. 41, 45 (1957)—and explained that "*Conley*'s 'no set of facts' language" doesn't describe "the minimum standard of adequate pleading to govern a complaint's survival." *Twombly*, 550 U.S. at 562–63 (quoting *Conley*, 355 U.S. at 45–46). Instead, at the pleading stage, allegations must include facts plausibly suggesting that the "'pleader is entitled to relief.'" *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)). The court thus applies the *Twombly* standard to defendant's motion.

## III.    Analysis

Plaintiff's Complaint asserts three claims for relief: (1) retaliation and retaliatory harassment violating Title IX (Count I); (2) sexual harassment violating both Title VII and Title IX (Count II); and (3) retaliation and retaliatory harassment violating Title VII (Count III).

Defendant's Motion to Dismiss asks the court to dismiss each one of plaintiff's claims.[5]

Defendant's theory goes like this:  Title VII entirely "preempts" Title IX in employment

discrimination suits, so plaintiff doesn't have any independent claims under Title IX; her

remaining Title VII claims are time-barred because the bulk of her allegations occurred more

than 300 days before she filed her EEOC Charge; and, to the extent her claims survive the

preemption analysis and her time-bar problems, plaintiff's allegations fail to state a claim under

Title VII or Title IX.

### A.      Threshold Issues

Before the court digs into whether plaintiff sufficiently alleges her claims, the court must

address several threshold issues.

#### 1.   Retaliation, Retaliatory Harassment, and Timeliness

To start, there's some confusion about plaintiff's claims.  Counts I and III of plaintiff's

Complaint assert claims of retaliation and retaliatory harassment under Title IX and Title VII,

respectively.  Defendant argues that these claims are the same and that there's no such thing as a

claim for retaliatory harassment.  *See* Doc. 11 at 1 n.1 ("In Counts I & III, [p]laintiff asserts her

claims for retaliation . . . and also includes the word 'harassment' as part of the alleged

retaliatory conduct, but this does not make it a distinct claim from her retaliation claim in

---

[5]      Plaintiff highlights that defendant's Motion to Dismiss and supporting memorandum didn't make any specific arguments against her retaliatory harassment claims.  *See* Doc. 10 at 1, 8 n.1.  She's right. *See* Doc. 6 at 1 (Def.'s Mot. to Dismiss) (asking the court to "enter an order dismissing, *in part*, [p]laintiff's claims" (emphasis added); *see also* Doc. 7 at 1 (Mem. in Supp. of Mot. to Dismiss) (describing plaintiff's claims as ones "for alleged sex harassment and retaliation under Title IX . . . and Title VII").  But in its Reply brief, defendant clarifies that it "seeks dismissal of all of [p]laintiff's claims."  Doc. 11 at 1; *see also* Doc. 7 at 1 (Mem. in Supp. of Mot. to Dismiss) (asking for plaintiff's Complaint to be dismissed).  In defendant's view, plaintiff's claims for retaliation and retaliatory harassment are the same, so defendant's arguments for dismissal of the retaliation claims apply equally to the retaliatory harassment claims.  Doc. 11 at 1 n.1.  The court disagrees with defendant that these claims are the same.  For reasons explained later in this Order, retaliation and retaliatory harassment are analytically distinct.  But, the court will consider defendant's argument against both claims, and thus approaches defendant's motion as one seeking dismissal of *all* of plaintiff's claims.

general."). And although plaintiff's papers aren't as clear as they could be, plaintiff maintains that she raises distinct claims for retaliation and retaliatory harassment. *See* Doc. 10 at 10 ("Plaintiff alleged that following her repeated protected activities, she suffered distinctly sufficient adverse employment actions *as well as* general harassment from her supervisor that would deter an employee from opposing unlawful employment practices." (emphasis added)). After concluding independent research, the court concludes that retaliation and retaliatory harassment are distinct claims.

Our court has recognized that there is "some confusion" about "whether retaliatory harassment is a theory of retaliation or an entirely separate claim[.]" *Bermudez v. City of Topeka*, No. 5:18-CV-4141-HLT-ADM, 2020 WL 206766, at *4 n.4 (D. Kan. Jan. 14, 2020). Although the Tenth Circuit has not "formally recognized" a claim for "retaliatory hostile work environment[,]" *Kline v. Utah Anti-Discrimination & Lab. Div.*, 418 F. App'x 774, 780 n.2 (10th Cir. 2011), the Tenth Circuit has noted that "retaliatory harassment, if sufficiently severe, may constitute 'adverse employment action' for purposes of a retaliation claim[,]" *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1264 (10th Cir. 1998); *see also Lujan v. Johanns*, 181 F. App'x 735, 738 (10th Cir. 2006) (considering whether ongoing retaliatory harassment in the aggregate was an adverse employment action).[6] As a result, our court frequently has analyzed claims for retaliation and retaliatory harassment as separate and distinct claims. *See Bermudez*, 2020 WL 206766, at *4 n.4; *see also Adcox v. Brennan*, No. 15-cv-9258-JWL, 2017 WL 2405326, at *6 (D. Kan. June 2, 2017); *Haney v. Preston*, No. 08-2658 JAR-GLR, 2010 WL

---

[6]       The court notes that the case law uses the terms "harassment" and "hostile work environment" "interchangeably in the Title VII context, especially in cases of retaliation." *Bermudez*, 2020 WL 206766, at *5 n.6.

5392670, at *12 (D. Kan. Dec. 22, 2010); *Turrentine v. United Parcel Serv., Inc.*, 645 F. Supp. 2d 976, 986 (D. Kan. 2009).

As Judge Lungstrum has explained, a "discrete" claim of retaliation is based on a "certain retaliatory act[.]" *Turrentine*, 645 F. Supp. 2d at 985; *see also Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1138 (10th Cir. 2008) ("Discrete acts 'occur on the day that they happen.'" (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002)) (quotation cleaned up)).  But "a claim of retaliatory harassment" is "based on the aggregate effect of the actions taken against [plaintiff]." *Turrentine*, 645 F. Supp. 2d at 985; *see also id.* at 987 (describing "a continuum of retaliatory activity").

This distinction has an enormous practical effect in the Title VII context.  For discrete claims of retaliation, "Title VII requires a litigant to file a claim within 300 days of the alleged [retaliatory] conduct." *Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005) (citing 42 U.S.C. § 2000e-5(e)(1)).  So, if a discrete retaliatory act occurred more than 300 days before plaintiff filed her EEOC charge, that act can't support a retaliation claim.

But for retaliatory harassment, the story is different.  That's because such "claims do not consist primarily of discrete acts, but often involve a series of incidents that span a period longer than 300 days." *Id.*  So, "as long as 'an act' contributing to a hostile work environment took place no more than 300 days before the plaintiff filed an EEOC charge, a court may consider the complete history of acts comprising that hostile work environment." *Id.* (quoting *Morgan*, 536 U.S. at 117).  Although this principle arose in the hostile work environment context, our court has applied it to retaliatory harassment claims. *See Turrentine*, 645 F. Supp. 2d at 987 n.10; *Bermudez*, 2020 WL 206766, at *5.

Title IX, by contrast, doesn't present these timeliness issues.  Title IX doesn't "expressly prescribe a statute of limitations . . . . Thus, the limitations period under Title IX actions is often longer than the 300 days afforded under Title VII."  *Harrington v. Lesley Univ.*, No. CV 20-11718-DPW, ___ F. Supp. 3d ___, 2021 WL 3616075, at *15 (D. Mass. Aug. 12, 2021).  As a result, a "claim under Title IX allows a plaintiff direct access to the courthouse" without the limitations Title VII imposes.  *Id.* at *14 (citing *Cannon v. Univ. of Chi.*, 441 U.S. 677, 717 (1979)) (further describing Title VII's administrative exhaustion requirements that don't apply to Title IX claims).  This difference between Title VII and Title IX presents another issue that defendant raises in its Motion to Dismiss, which the court addresses next.

### 2.   Title IX "Preemption"

Defendant argues that "Title VII provides a comprehensive administrative remedial procedure" for employment discrimination claims that Title IX does not.  Doc. 7 at 11.  So, defendant contends, "Title VII preempts [such] claims" for employment discrimination under Title IX.  Doc. 7 at 11–12.  Otherwise, defendant argues, plaintiffs employed by federal funding recipients could "forego the statutory procedure required under Title VII and simply proceed under Title IX" for their employment discrimination claims.  Doc. 11 at 13.  Neither the Supreme Court nor the Tenth Circuit has addressed the idea that Title VII "preempts"—or, more appropriately, displaces[7]—Title IX.  But our court has.  In *Fox v. Pittsburg State University*, 257 F. Supp. 3d 1112 (D. Kan. 2017), Chief Judge Robinson persuasively explained, in great detail, why Title VII doesn't displace Title IX for employment discrimination claims.  The court agrees

---

[7]      Preemption is a doctrine about "the relationship between state and federal law."  *Fox v. Pittsburg State Univ.*, 257 F. Supp. 3d 1112, 1119 n.10 (D. Kan. 2017) (citation omitted).  It is therefore "not the proper term to describe the relationship between Title VII and Title IX, which are both federal law[s]."  *Id.*  "Rather, the issue is whether these federal laws *displace* each other."  *Id.* (emphasis added).

with Chief Judge Robinson's analysis and conclusion.  To avoid retreading old ground, the court

briefly summarizes Chief Judge Robinson's reasoning in *Fox*, which the court adopts here.

*First*, Chief Judge Robinson analyzed the Supreme Court's Title IX jurisprudence—most

relevant, the Supreme Court's decision in *Jackson v. Birmingham Board of Education*, 544 U.S.

167 (2005).  In *Jackson*, the Supreme Court "recognized an employee's private right of action

for retaliation under Title IX[.]"  *Fox*, 257 F. Supp. 3d at 1120 (citing *Jackson*, 544 U.S. at 180).

In doing so, the Supreme Court compared Title IX to Title VII and recognized that the two

statutes are "vastly different[.]"  *Jackson*, 544 U.S. at 175.  For one, "Title IX's cause of action is

implied, while Title VII's is express."  *Id.*  And, "Title IX is a broadly written general prohibition

on discrimination, followed by specific, narrow exceptions to that broad prohibition."  *Id.*  While

Title VII, by contrast, "spells out in greater detail the conduct that constitutes discrimination in

violation of that statute."  *Id.*; *see also Harrington*, 2021 WL 3616075, at *15–16 (further

describing the differences between Title VII and Title IX in remedies, limitations periods,

constitutional bases of enactment, and legislative goals).  The differences between the two

statutes, *Fox* reasoned, show that they apply concurrently to employment discrimination suits.

Indeed, if "Congress intended for Title VII to displace employment discrimination claims under

Title IX, it could have drafted Title IX, which was enacted *following* Title VII, to state as much."

*Fox*, 257 F. Supp. 3d at 1123.  "Instead, Title IX broadly covers any 'person,' not just students,

alleging discrimination."  *Id.*

*Next*, Chief Judge Robinson surveyed the split in authority amongst the circuit courts on

this question.  On one side, the First, Third, Fourth, and Sixth Circuits all hold "that Title VII and

Title IX have concurrent applicability in employment discrimination claims."  *Fox*, 257 F. Supp.

3d at 1121–22 (citing *Lipsett v. Univ. of P.R.*, 864 F.2d 881, 896–97 (1st Cir. 1988); *Doe v.*

*Mercy Catholic Med. Ctr.*, 850 F.3d 545, 563 (3d Cir. 2017); *Preston v. Va. ex rel. New River Cmty. Coll.*, 31 F.3d 203, 205–07 (4th Cir. 1994); *Ivan v. Kent St. Univ.*, No. 94-4090, 92 F.3d 1185 (Table), 1996 WL 422496, at *2 n.10 (6th Cir. July 26, 1996)).  On the other side, only the Fifth and Seventh Circuits hold that Title VII displaces Title IX in employment discrimination cases.  *See Lakoski v. James*, 66 F.3d 751, 753–54 (5th Cir. 1995); *Waid v. Merrill Area Pub. Schs.*, 91 F.3d 857, 862 (7th Cir. 1996).  Unsurprisingly, defendant mainly cites the Fifth Circuit's decision in *Lakoski* to support its position.

In *Lakoski*, the Fifth Circuit concluded that allowing Title IX employment discrimination claims to bypass Title VII's administrative requirements would disrupt Title VII's "carefully balanced remedial scheme for redressing employment discrimination[,]" and would do "violence to the congressionally mandated procedures of Title VII."  *Lakoski*, 66 F.3d at 754.  But as Chief Judge Robinson highlighted in *Fox*, the Fifth Circuit's decision in *Lakoski* "pre-dated *Jackson*." *Fox*, 257 F. Supp. 3d at 1121.  And in *Jackson*, the Supreme Court expressed no concerns about an employee bypassing Title VII's administrative procedures and bringing a claim for retaliation under Title IX.  Thus, *Lakoski*'s central premise is questionable under more recent Supreme Court precedent.  *See Doe*, 850 F.3d at 563 ("*Lakoski* . . . w[as] decided a decade before the Supreme Court handed down *Jackson*, which explicitly recognized an employee's private claim under [Title IX].  We thus question [its] continued viability[.]")

*Finally*, Chief Judge Robinson predicted that the Tenth Circuit would adopt the majority approach and reject the displacement argument "given that the Tenth Circuit applies Title VII principles to Title IX employment discrimination actions."  *Fox*, 257 F. Supp. 3d at 1123. Indeed, Chief Judge Robinson noted, in "June 2017, the Tenth Circuit in *Hiatt v. Colorado Seminary* applied Title VII standards to hybrid Title VII and Title IX retaliation claims by a

university faculty member." *Id.* (citing 858 F.3d 1307, 1315 n.8 (10th Cir. 2017)).  In short, the
Tenth Circuit hasn't held or even suggested that Title VII provides the exclusive statutory
vehicle for employment discrimination claims.  Absent such direction—and given that the Tenth
Circuit appears comfortable with hybrid Title VII and Title IX claims—the court predicts that the
Tenth Circuit, if presented with this issue, would hold that Title VII doesn't "preempt" or
displace Title IX in employment discrimination cases.  Thus, the court follows that majority view
here.

> **B.      Plaintiff's Claims**

Now, the court turns to plaintiff's claims under Title IX and Title VII.

Title IX of the Education Amendments Act of 1972 prohibits discrimination "on the basis
of sex" in educational programs that receive federal funds.  20 U.S.C. § 1681(a).  This
prohibition covers employment discrimination, *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251
(10th Cir. 2021), and retaliation against individuals who report discrimination, *Hiatt v. Colo.
Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017).

Title VII of the Civil Rights Act of 1964 likewise prohibits discrimination in employment
"because of . . . sex."  42 U.S.C. § 2000e-2(a)(1).  "Title VII also prohibits employers from
retaliating against employees who have opposed an unlawful employment practice such as sex
discrimination."  *Hiatt*, 858 F.3d at 1315 (citing 42 U.S.C. § 2000e-3(a)).  Because of the
similarities between the two statutes in employment discrimination, "'[c]ourts have generally
assessed Title IX discrimination claims under the same legal analysis as Title VII claims.'"
*Throupe*, 988 F.3d at 1251 (quoting *Gossett v. Okla. ex rel. Bd. of Regents*, 245 F.3d 1172, 1176
(10th Cir. 2001)).

As explained before, plaintiff's Title IX claims for retaliation, retaliatory harassment, and sexual harassment don't raise any complex timeliness issues. So, the court will begin with those claims and consider all of plaintiff's allegations to determine whether her claims survive defendant's Motion to Dismiss.

### 1. Title IX Claims

#### a. Retaliation and Retaliatory Harassment

"It is well-settled that retaliatory conduct is within the broad prohibition of 'discrimination' made unlawful by Title IX." *Tackett v. Univ. of Kan.*, 234 F. Supp. 3d 1100, 1108 (D. Kan. 2017) (citing *Jackson*, 544 U.S. at 174); *see also Douglass v. Garden City Cmty. Coll.*, No. CV 20-2076-KHV, ___ F. Supp. 3d ___, 2021 WL 2352430, at *4 (D. Kan. June 9, 2021) ("Because reporting incidents of discrimination is integral to Title IX enforcement, Title IX protects from retaliation individuals who report discrimination.").

Our Circuit hasn't outlined the elements of a prima facie case of retaliation under Title IX, but our court has. To state a claim for retaliation under Title IX, plaintiff must allege that: "1) he or she engaged in protected activity; 2) defendant had knowledge of the protected activity; 3) materially adverse school-related action was taken against plaintiff; and 4) there was a causal connection between the protected activity and the adverse action." *Tackett*, 234 F. Supp. 3d at 1109. For the third element, an action is "materially adverse" if it is "sufficiently severe or pervasive that it could well dissuade a reasonable worker from engaging in protected activity." *Adcox*, 2017 WL 2405326, at *7 (first citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006); then citing *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1217–19 (10th Cir. 2008)). Notably, this "relaxed adverse-action standard" for retaliation claims established by the Supreme Court in *Burlington Northern* is less demanding than the adverse-action standard for

hostile work environment claims. *Id.* That standard asks whether the challenged conduct is sufficiently "severe or pervasive to 'alter the conditions of the victim's employment and create an abusive working environment[.]'" *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Applying *Burlington Northern*'s relaxed adverse-action standard, the court concludes that plaintiff, at this stage, sufficiently has alleged a claim for retaliation under Title IX.

*First*, plaintiff sufficiently alleges protected activity under Title IX. Plaintiff reported the alleged sexual assault and harassment of the female student to defendant's Director of Student Services. Doc. 1 at 3, 5 (Compl. ¶¶ 14–16, 29–30). She also told Principal Skretta. *Id.* Reporting sexual assault or harassment is the classic example of protected activity under Title IX. *Douglass*, 2021 WL 2352430, at *5 ("Title IX's enforcement scheme depends on individual reporting and accordingly protects from retaliation *individuals who witness and report discrimination*." (emphasis added)).

*Second*, plaintiff sufficiently alleges that defendant knew about the protected activity. In her Complaint, plaintiff alleges she met with "two other [d]efendant administrators" and gave them a letter about her report of the alleged sexual assault. Doc. 1 at 4 (Compl. ¶ 24). Plaintiff also alleges that "another administrator" attended her meeting with Principal Skretta where he reprimanded plaintiff. *Id.* (Compl. ¶ 25).

*Third*, plaintiff sufficiently alleges a materially adverse action. In her Complaint, plaintiff alleges that Principal Skretta reprimanded her for how she handled the report and placed a written reprimand in her personnel file. *Id.* at 4 (Compl. ¶¶ 22, 25). A "reprimand[ ] . . . can constitute an adverse employment action" if it "affects the likelihood that the plaintiff will be terminated, undermines the plaintiff's current position, or affects the plaintiff's future employment opportunities." *Medina v. Income Support Div., N.M.*, 413 F.3d 1131, 1137 (10th

Cir. 2005). Here, plaintiff alleges that in the spring of 2019—sometime after Principal Skretta's written reprimand—she applied for one of five open principal positions with defendant and didn't get the job. Doc. 1 at 5 (Compl. ¶ 33). At this stage, it's plausible to infer that the written reprimand affected plaintiff's future employment opportunities as a principal with the district. Thus, the written reprimand suffices as an adverse employment action at this stage of the case. And, in any event, defendant's failure to promote plaintiff to principal is a sufficient adverse employment action on its own. *Trujillo v. N.M. Dep't of Corr.*, No. 98-2143, 182 F.3d 933 (Table), 1999 WL 194151, at *4 (10th Cir. Apr. 8, 1999) ("[I]t is well-established that a failure to promote constitutes an adverse employment action in a . . . retaliation claim.").

*Fourth* and finally, plaintiff sufficiently alleges a causal connection between her protected activity and the adverse action. Plaintiff reported the alleged sexual assault on March 21, 2019. Doc. 1 at 3 (Compl. ¶ 14). Principal Skretta issued the written reprimand a little more than a week later, on March 29. *Id.* at 4 (Compl. ¶ 22). The Tenth Circuit has held that a "close temporal proximity" of "less than two weeks" between the protected activity and adverse action "is alone sufficient to [allege] a causal connection" between the two events. *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1228 (10th Cir. 2008). A temporal proximity of a little more than one week standing "alone [is] sufficient to [allege] a casual connection between [the] protected activity and [the adverse action.]" *Id.* Also, defendant didn't promote plaintiff to the principal position she applied for shortly after the written reprimand issued. This temporal proximity suffices to allege plausibly a causal connection at this stage.

To the extent plaintiff also asserts an independent claim for retaliatory harassment, the court likewise concludes she alleges that claim sufficiently. "[R]etaliatory harassment, if sufficiently severe, may constitute 'adverse employment action' for purposes of a retaliation

claim." *Gunnell*, 152 F.3d at 1264; *see also Lujan*, 181 F. App'x at 738 (considering whether ongoing retaliatory harassment in the aggregate was an adverse employment action).  And, again, an action is "materially adverse" in the retaliation context if it is "sufficiently severe or pervasive that it could well dissuade a reasonable worker from engaging in protected activity." *Adcox*, 2017 WL 2405326, at *7.

Here, plaintiff alleges that just days after she reported the alleged sexual assault, Principal Skretta issued a formal written reprimand.  Doc. 1 at 4 (Compl. ¶ 22).  When plaintiff asked Principal Skretta what policy she had violated, "he admitted none." *Id.*  And when she asked him again in a meeting with another administrator, Principal Skretta "raised his voice" and told her he would place the reprimand in her personnel file. *Id.* (Compl. ¶ 25).  Shortly afterwards, plaintiff applied for one of five open principal positions within the district, but defendant didn't promote her. *Id.* at 5 (Compl. ¶ 33).  Principal Skretta then began excluding plaintiff from meetings and communications, leaving her "to find out about meetings from her subordinates and colleagues." *Id.* at 4 (Compl. ¶ 27).  Plaintiff alleges this conduct continued for the next year and a half, from April 2019 through the summer and fall of 2020. *Id.* at 4, 5, 6 (Compl. ¶¶ 27, 34, 41).

She also alleges that Principal Skretta began singling her out for unfounded criticism: specifically, that he reprimanded her twice in February 2020 for failing to tell him about a fire alarm in the building and for failing to contact him before calling 911 in response to an aggressive student, and once again in July 2020 for time-reporting requirements. *Id.* at 5–6 (Compl. ¶¶ 36–37, 40).  And, finally, plaintiff alleges Principal Skretta provided her with a poor performance evaluation in April 2020 without conducting any "formal observations of her

work[.]"  *Id.* at 6 (Compl. ¶ 39).  Plaintiff alleges that defendant "admitted that the reprimand

and negative evaluation Principal Skretta issued to [her] were unfounded."  *Id.* (Compl. ¶ 43).

Accepting all of plaintiff's allegations as true and viewing them in the light most

favorable to her, the court concludes that plaintiff's "list of allegedly retaliatory acts, when

considered in the aggregate" plausibly could "rise to the level of a materially adverse action."

*Turrentine*, 645 F. Supp. 2d at 987.  That is, when taken together, the alleged retaliatory acts—

some of which the court concluded already allege adverse employment actions on their own—

"could well dissuade a reasonable worker from engaging in protected activity."  *Adcox*, 2017 WL

2405326, at *7–8 (concluding, at the summary judgment stage, that manager's actions in

"sing[ling] plaintiff out for heightened scrutiny[,]" "over minor or nonexistent flaws[,]" "over the

course of roughly 18 months following" protected activity "could dissuade a reasonable worker

from pursuing a charge of discrimination"); *Haney*, 2010 WL 5392670, at *11–12; (similarly

concluding on summary judgment that supervisor's criticism of plaintiff's work in the presence

of other coworkers, harsh verbal treatment, threats of disciplinary action, and rejection of

requests for benefits could, "when considered in the aggregate, rise to the level of a materially

adverse action"); *Turrentine*, 645 F. Supp. 2d at 987 (deciding at summary judgment that

supervisor "writ[ing] plaintiff up for every little thing and giv[ing] her warning letters when it

wasn't the proper step in progressive discipline" could, "when considered in the aggregate, rise

to the level of a materially adverse action" (quotation cleaned up)).  *Cf. Bermudez*, 2020 WL

206766, at *7 (holding on summary judgment that a "remark that someone should do firefighter

training to consider themselves a fire inspector and then tweeting that no one is immune from

training is, at worst, rude or mildly passive aggressive[,]" and so did "not objectively rise to the

level of conduct that would dissuade a reasonable employee from engaging in protected conduct").

Importantly, plaintiff alleges this pattern of conduct began almost immediately after she first reported the alleged sexual assault of the female student and didn't stop for a year and a half. That temporal proximity suffices to allege a causal connection between plaintiff's protected activity and Principal Skretta's ongoing retaliatory harassment. *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002) (concluding that plaintiff established prima facie case of retaliation by presenting "evidence of temporal connections" between protected activity and adverse actions as well as "evidence of a marked shift in the attitudes and treatment of him by his supervisors"). Thus, at this stage, the court concludes plaintiff has alleged sufficiently a prima facie case of retaliation and retaliatory harassment under Title IX.

### b. Sexual Harassment

Plaintiff's Complaint next asserts a claim for sexual harassment under Title IX. To state a claim for sexual harassment, plaintiff must allege "(1) [she] was discriminated against because of [her] sex, and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of h[er] employment." *Throupe*, 988 F.3d at 1251. For the first element, "plaintiff's sex need only be a 'motivating factor' in the unlawful employment practice." *Id.* (quoting 42 U.S.C. § 2000e-2(m)). A plaintiff can show that sex was a motivating factor either by alleging "acts of harassment that are 'facially sex-based[,]'" or by alleging "facially sex-neutral conduct" that "'support[s] a finding of gender animus'" when "'viewed in the context of other, overtly gender-discriminatory conduct.'" *Id.* (quoting *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1174 (10th Cir. 2020)).

Here, the court's analysis begins and ends with the first element.  Plaintiff doesn't allege facts supporting an inference that sex was a motivating factor in the alleged harassment under either of the formulations described above.  Plaintiff relies on the same set of factual allegations for her sexual harassment claim as she does for her retaliatory harassment claim.  She alleges that Principal Skretta excluded her "from necessary communications, meetings and scheduling[,]" issued "unwarranted and improper reprimands and performance reviews[,]" and that defendant failed to promote her and failed to stop Principal Skretta's alleged harassment after she complained to defendant's administrators about it.  Doc. 1 at 10 (Compl. ¶ 65).  But plaintiff never alleges any facts capable of supporting a plausible finding or inference that this harassment was based on, or even motivated by her sex.  Only one allegation comes close:  that the "other female assistant principal working beneath Principal Skretta at the building also experienced harassing behaviors from him."  *Id.* at 5 (Compl. ¶ 35).  But without any facts specifying how Principal Skretta treated the other female assistant principal at the school, this allegation is conclusory and thus insufficient to support a claim for sexual harassment.

At bottom, plaintiff's Complaint asserts purely conclusory allegations that the conduct she describes amounted to "gender-based harassment."  Doc. 1 at 10 (Compl. ¶ 66).  That doesn't suffice to plead a claim for sexual harassment under Title IX.

### 2.  Title VII Claims

Plaintiff asserts the same three claims—for retaliation, retaliatory harassment, and sexual harassment—under Title VII as well.  For each claim, she relies on the same factual allegations as she does for her Title IX claims.[8]  But just because plaintiff's claims for retaliation and retaliatory harassment survive under Title IX doesn't mean those claims necessarily survive

---

[8]      Indeed, Count II of plaintiff's Complaint asserts a claim for sexual harassment under both Title VII and Title IX.  *See* Doc. 1 at 9.

under Title VII.  That's because, as already explained, Title VII's administrative scheme requires

the court to consider:  (1) whether plaintiff's discrete retaliation claims are time-barred and

whether any timely allegations state a claim under Title VII; and (2) for her retaliatory

harassment claim, whether the events outside the 300-day filing window are related closely

enough to the events inside the 300-day filing window to qualify as part of the same hostile work

environment claim.  The court needn't get into these issues for plaintiff's sexual harassment

claim under Title VII because it fails for the same reasons the claim failed the Title IX analysis.

*See supra* Section III.B.1.b.  So, the court now considers the issues for the discrete retaliation

and retaliatory harassment claims in turn.  The next two subsections address the two theories.

### a.  Discrete Retaliation Claims

For a discrete claim of retaliation, "Title VII requires a litigant to file a claim within 300

days of the alleged [retaliatory] conduct."  *Duncan v. Manager, Dep't of Safety, City & Cnty. of

Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005) (citing 42 U.S.C. § 2000e-5(e)(1)).  Plaintiff filed

her EEOC Charge on November 13, 2020.  Doc. 1 at 2 (Compl. ¶ 8).  Thus, any discrete

retaliatory acts occurring before January 18, 2020 (what the court will call "the pre-limitations

period"), aren't timely.  This conclusion means that Principal Skretta's written reprimand for

how plaintiff handled the sexual assault report and defendant's failure to promote plaintiff to one

of the open principal jobs in the district are untimely.  Thus, to the extent plaintiff bases discrete

Title VII retaliation claims on those individual allegations, those claims are time-barred and the

court dismisses them.

The discrete retaliatory acts occurring after January 18, 2020 (the "post-limitations

period") are timely.  These remaining allegations include (1) Principal Skretta's email

reprimands to plaintiff for her failure to tell him about a building evacuation and a 911 call in

February 2020 and (2) Principal Skretta's negative performance evaluation of plaintiff that he placed in her personnel file in April 2020.

To establish a prima facie case of retaliation under Title VII, plaintiff must show "'(1) that [she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.'" *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1233–34 (10th Cir. 2015) (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)).  As should be familiar by now, an action is "materially adverse" in the retaliation context if it is "sufficiently severe or pervasive that it could well dissuade a reasonable worker from engaging in protected activity." *Adcox*, 2017 WL 2405326, at *7 (first citing *Burlington*, 548 U.S. at 57; then citing *Somoza*, 513 F.3d at 1217–19).

The court concludes the *first* alleged retaliatory act—the email reprimands—doesn't allege a plausible retaliation claim.  On their own, the two reprimands don't "rise to the level of conduct that would dissuade a reasonable employee from engaging in protected conduct." *Bermudez*, 2020 WL 206766, at *7.  Plaintiff may view the emails as patronizing or unnecessary, but the Supreme Court has held that "'petty slights, minor annoyances, and simple lack of good manners' do not deter employees from pursuing their rights under Title VII." *Id.* (quoting *Burlington*, 548 U.S. at 68) (quotation cleaned up).  And plaintiff doesn't allege that Principal Skretta placed these email reprimands in plaintiff's personnel file.  Without any allegation that the email reprimands "had a direct action bearing on [her] future employment[,]" plaintiff fails to state a claim for retaliation based on these emails. *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1270 (10th Cir. 2005) (determining that a "single write-up [was] not an adverse

employment action" where plaintiff didn't establish "that the single write-up ha[d] any bearing on her likelihood of being fired"); *Ross v. Pentair Flow Techs., Inc.*, No. 19-2690-SAC, 2021 WL 4134317, at *8 (D. Kan. Sept. 10, 2021) (finding single incident report wasn't an adverse employment action where plaintiff "fail[ed] to allege how this single incident report . . . [w]ould harm his future employment prospects").

The court likewise concludes that plaintiff's *second* alleged retaliatory act—the negative evaluation—doesn't allege a plausible retaliation claim either. The Tenth Circuit has held that a negative performance evaluation *can* amount to an adverse employment action in certain circumstances. *Toth v. Gates Rubber Co.*, No. 99-1017, 216 F.3d 1088 (Table), 2000 WL 796068, at *9 (10th Cir. June 21, 2000); *Williams v. CoreCivic, Inc.*, No. 17-2310-JAR, 2018 WL 372439, at *7 (D. Kan. Jan. 11, 2018). But typically, this occurs only when the negative performance evaluation later leads to a materially adverse employment action such as termination or a failure to promote. *Toth*, 2000 WL 796068, at *9 (concluding plaintiff "suffered an adverse employment action when she received the negative performance evaluations" because her "ultimate discharge was based on the negative performance evaluations"); *see also MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005) (concluding that plaintiff's "'below expectations' job performance rating *and* her one-day suspension" were adverse employment actions (emphasis added)), *abrogated on other grounds by Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018). Plaintiff never identifies any authority providing that a negative performance evaluation, on its own, amounts to an adverse employment action. The court's independent research revealed no authority of this kind. Because plaintiff hasn't alleged

any other adverse action flowing from the negative performance evaluation, the evaluation, on its own, can't allege a plausible discrete retaliation claim.[9]

### b. Retaliatory Harassment

Plaintiff's retaliatory harassment claim under Title VII fares better. As explained before, retaliatory harassment claims "do not consist primarily of discrete acts, but often involve a series of incidents that span a period longer than 300 days." *Duncan*, 397 F.3d at 1308. So, "as long as 'an act' contributing to a hostile work environment took place no more than 300 days before the plaintiff filed an EEOC charge, a court may consider the complete history of acts comprising that hostile work environment." *Id.* (quoting *Morgan*, 536 U.S. at 117). The court thus must determine whether the pre-limitations period events are related sufficiently to the post-limitations period events so that they constitute the same hostile work environment. To do so, the court analyzes whether "'the pre- and post-limitations period incidents involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers.'" *Id.* at 1309 (quoting *Morgan*, 536 U.S. at 120).

The court concludes the alleged incidents in the pre- and post-limitations period sufficiently allege a series of events "compris[ing] the same hostile environment[.]" *Id.* Plaintiff

---

[9]     The court rejects plaintiff's attempts to bootstrap time-barred allegations to her timely retaliation claims. Plaintiff alleges she applied for an open principal's position in spring 2019 and that, "[t]o date, [she] has not received the job." Doc. 1 at 5 (Compl. ¶ 33). But plaintiff doesn't allege that her complaints about Principal Skretta in March 2020 or Principal Skretta's April 2020 negative evaluation caused defendant not to hire her for a job she applied for an entire year earlier. Nor is it plausible to find or infer as much. *See MacKenzie*, 414 F.3d at 1279 (rejecting plaintiff's argument that a failure to promote, although an adverse employment action, was based on protected activity that occurred nine months later).

        Also, while the court doesn't rely on defendant's exhibits to reach this conclusion, the court notes that defendant filled the open principal positions in spring and summer 2019. *See* Doc. 7-3 (Ex. C). And plaintiff doesn't allege that any other principal jobs opened since then or that she applied for any other open positions. So, the negative performance evaluation in April 2020 couldn't have caused any failure to promote in spring or summer 2019.

alleges that Principal Skretta, during the post-limitations period, issued unwarranted reprimands to plaintiff, placed a poor performance evaluation in her personnel file, singled her out for time-reporting requirements, and excluded her from meetings and communications. These allegations mirror plaintiff's allegations from the pre-filing period—where Principal Skretta placed a formal reprimand in plaintiff's personnel file and excluded her from meetings and communications. In short, all of plaintiff's allegations involve "the same type of employment actions," they "occurred relatively frequently," and they "were perpetrated by the same manager[ ]"—Principal Skretta. *Duncan*, 397 F.3d at 1309. Based on this reasoning, the court concludes that plaintiff's pre- and post-limitations period allegations are related to one another sufficiently to allege plausibly a single, unified hostile work environment.

So, for plaintiff's retaliatory harassment claim under Title VII, the court can consider all her allegations together to determine whether she states a claim. This conclusion simplifies the court's work because it already has considered all of plaintiff's allegations together in the Title IX analysis and determined those allegations sufficiently plead a retaliatory harassment claim. Because the standard for this claim under Title VII is the same one as applied under Title IX, *see Throupe*, 988 F.3d at 1251, the court concludes plaintiff sufficiently has alleged a retaliatory harassment claim under Title VII for the same reasons she sufficiently alleged a claim under Title IX.

## IV.   Conclusion

The court dismisses with prejudice[10] plaintiff's claims for sexual harassment under Title IX and Title VII (Count II), and her claim for retaliation under Title VII (Count III), to the extent

---

[10]      Generally, "a dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile[.]" *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014). Here, the court finds that amendment would be futile. Plaintiff doesn't identify any alleged facts that would shore up her sexual harassment claim, nor does she even ask

that claim is based on any discrete act of retaliation.  But the court concludes plaintiff has alleged sufficiently a claim for retaliatory harassment under Title VII (Count III) and for retaliation and retaliatory harassment under Title IX (Count I).  So, those claims survive defendant's motion and will proceed.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Dismiss (Doc. 6) is granted in part and denied in part, as explained in full in this Order.

**IT IS SO ORDERED.**

**Dated this 10th day of November, 2021, at Kansas City, Kansas.**


<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**

---

for leave to amend her Complaint.  And the court need not grant leave to amend where plaintiff "fail[s] to identify the specific factual allegations [she] would allege in an amended complaint."  *Carroll v. Lawton Indep. Sch. Dist. No. 8*, 805 F.3d 1222, 1231 (10th Cir. 2015).  So, the court dismisses plaintiff's sexual harassment claims with prejudice.